UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHELLE CLARKE,<br>　　　Plaintiff, | CIVIL ACTION NO.<br>3:13-CV-690 (JCH) |
| v. | |
| 1 EMERSON DRIVE NORTH<br>OPERATIONS, LLC,<br>　　　Defendant. | MAY 28, 2015 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 42)**

Plaintiff Michelle Clarke brings this action against her former employer, 1 Emerson Drive North Operations, LLC ("One Emerson Drive" or "OED"), claiming that her termination constituted discrimination on the basis of her race and gender and retaliation for her protected activities related to her employer's discrimination on the basis of race or gender. One Emerson Drive now moves for summary judgment. See Defendant's Motion for Summary Judgment (Doc. No. 42). For the reasons that follow, the Motion is granted in part and denied in part.

**I.　　FACTS**[1]

Michelle Clarke, who is black, ¶ 8, first began working for OED as a nurse in November 2007, ¶ 1. OED operates Kimberly Hall North, a skilled nursing facility in Windsor, Connecticut. Id. From time to time during the course of her employment with OED, Clarke received verbal or written warnings, notices, and the like regarding

---

[1] All facts in this Part of this Ruling are all taken from the parties statements pursuant to District of Connecticut Local Rule 56(a). All simple citations to paragraph numbers ("¶ __") refer to the corresponding paragraphs in both of the parties' statements and, with the qualifications noted in parentheticals accompanying some of the citations, refer to undisputed facts. See Defendant's Local Rule 56(a)1 Statement (Doc. No. 44); Plaintiff's Local Rule 56(a)(2) Statement (Doc. No. 49-2). To the extent necessary, the facts of this case—or disputes about what the facts are—are treated in greater detail in the Discussion section, Part III infra.

1

allegations of deficient performance with respect to, <u>inter alia</u>, her attendance, her practices with respect to calling in to say that she would not be reporting for duty on a given day, her demeanor, her adherence to policies regarding storage of controlled substances, and her compliance with physicians' orders (<u>e.g.</u>, to collect urine from patients). <u>See, e.g.</u>, ¶¶ 18, 19, 28, 29, 30, 31, 42 (Clarke admits at least that the warnings, notices, etc., to which OED refers in the cited paragraphs were issued and, in some cases, also to the truth of the allegations contained in the warnings, notices, etc., <u>see, e.g.</u>, ¶ 19).

In April 2012, Clarke participated at least one meeting with Human Resources employees and supervisory staff of OED. ¶ 43. After the meeting, Clarke called Dick Blinn, "the New England Executive Vice President" regarding "what she viewed as unfair write-ups." ¶ 48. In response, on May 3, 2012, another meeting was held with Human Resources employees and supervisory staff. ¶¶ 50, 51. Clarke's employment was ultimately terminated as of May 14, 2012. ¶ 53 (Clarke denies certain aspects of this paragraph, but not the termination date).

## II.    STANDARD OF REVIEW

Granting a motion for summary judgment is proper only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." <u>O'Hara v. Nat'l Union Fire Ins. Co.</u>, 642 F.3d 110, 116 (2d Cir. 2011). Thus, the court's role in deciding such a motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." <u>Id.</u> In making this determination, the court "must resolve all ambiguities and draw all inferences against the moving party." <u>Garcia v. Hartford Police Dep't</u>, 706 F.3d 120, 127 (2d Cir. 2013).

The moving party bears the burden of establishing the absence of genuine issues of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party meets that burden, the party opposing the motion will only prevail if it sets forth "specific facts" that demonstrate the existence of "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).

For summary judgment purposes, a genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. See Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor). Mere conclusory statements or allegations are not sufficient to defeat a summary judgment motion. Davis v. N.Y., 316 F.3d 93, 100 (2d Cir. 2002).

### III.  DISCUSSION

The operative complaint, Clarke's Amended Complaint (Doc. No. 35), claims entitlement to relief, and correspondingly seeks to establish One Emerson Drive's liability, based on three theories, all corresponding to private rights of action created by both Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-51 et seq. ("the CFEPA"). Clarke claims that OED's termination of her employment constituted illegal race discrimination in violation of Title VII (Count One) and the CFEPA (Count Four); illegal gender discrimination in violation

of Title VII (Count Two) and the CFEPA (Count Five); and illegal retaliation for activity protected under Title VII (Count Three) and the CFEPA (Count Five).

### A. Clarke's race discrimination and gender discrimination claims

A court evaluates claims of race discrimination and gender discrimination such as those that Clarke raises in Counts One, Two, Four, and Five under one and the same framework. See Kaytor v. Electric Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010). The burden of production is initially on the plaintiff to establish a prima facie case. See Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008). To this end, a plaintiff "must show: (1) that [s]he belonged to a protected class; (2) that [s]he was qualified for the position [s]he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Id. One way that a plaintiff can meet her burden as to the fourth prong is by proffering evidence of "disparate treatment—that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group.'" Ruiz v. Cnty. Of Rockland, 609 F.3d 486, 493 (2d Cir. 2010). A second way a plaintiff can meet this burden is by proffering evidence "that [the] plaintiff was replaced by someone outside the protected class." Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

If the plaintiff makes out a prima facie case, the employer "must, if it is to shift the burden back to plaintiff, produce evidence that [the plaintiff] was terminated 'for a legitimate, nondiscriminatory reason.'" Holcomb, 521 F.3d at 140 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Finally, if the employer meets this burden of production, the plaintiff "may no

longer rely on . . . presumption[s]." Id. (citing Burdine, 450 U.S. at 255–56). The question then is whether the plaintiff has offered "sufficient evidence [for] a reasonable jury [to] conclude by a preponderance of the evidence that the decision to fire h[er] was based, at least in part, on the fact that [she] was [a member of the relevant protected class]." Id.

One Emerson Drive argues that all of Clarke's race discrimination and gender discrimination claims fail at the fourth prong of the prima facie case, see Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment ("Deft. Mem.") (Doc. No. 43) at 18–23, 27–29, i.e., that Clarke fails to meet her burden of producing evidence "that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent," Holcomb, 521 F.3d at 138, and also that Clarke's discrimination claims fail at the final phase in the burden-shifting framework, i.e., that she fails to "raise[ ] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire h[er] was based, at least in part, on the fact that [she] was [a member of the relevant protected class]." Holcomb, 521 F.3d at 140; Deft. Mem. at 25–26, 29–30.

        1.     Race discrimination

In support of her contention that she meets her burden of production as to this fourth prong of her race discrimination claims, Clarke claims that, after she was terminated, she was replaced by "a woman of Philippine and Asian descent," Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Pltf. Mem.") (Doc. No. 49-1) at 15 (citing Exhibit C to the Memorandum, Defendant's Supplemental Responses to Plaintiff's Interrogatories (Doc.

No. 49-3 at 47)).  OED does not dispute the truth of this claim.  This evidence—that Clarke, a black woman, was replaced by a woman who is not black—is sufficient to meet Clarke's "minimal" burden at the summary judgment phase with respect to her prima facie case of race discrimination.  See Zimmermann, 251 F.3d at 381.

OED attempts to meet its burden of showing a legitimate, nondiscriminatory reason for its terminating Clarke by way of evidence of various misconduct by Clarke.  See Deft. Mem. at 24–25.  The weight of this evidence is substantial.  However, at her deposition, Clarke disputed the validity of all, or nearly all, of the reasons given as bases for her termination.  See Pltf. Mem. at 16–18.  The court cannot, on this record, conclude that "the defendant['s] proffered nondiscriminatory reason is 'dispositive and forecloses any issue of material fact,'" and accordingly "summary judgment is inappropriate."  Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 124 (2d Cir. 2004).

The court thus denies the Motion with respect to the race discrimination counts, i.e., Counts One (Title VII) and Four (CFEPA).

2. Gender discrimination

As for the same (fourth) prong of Clarke's gender discrimination claim, the only means by which Clarke attempts to meet her burden of production is by showing that she was treated differently from (and adversely as compared to) a male coworker who was otherwise situated similarly to her.  See Pltf. Mem. at 19; see also Transcript of Deposition of Michelle Clarke ("Clarke Depo.") (Doc. No. 44-1) at 214  (admitting that this "is the only basis upon which [she] bring[s] [her] gender discrimination claim").  One

6

Emerson Drive argues that Clarke does not present sufficient competent evidence to sustain this argument.  See Deft. Mem. at 21–23.  The court agrees.

A plaintiff "cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial." Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985).  The evidence that Clarke proffers is inadmissible, and Clarke has not attempted to make any showing of the kind described in Burlington.  See id.

Clarke identifies the single male comparator as "Ryan" (she could not remember a last name, see Clarke Depo. at 195).  Ryan, she claims, was being "writ[ten] . . . up for some stuff that he didn't do."  Id.; see also id. at 216 (stating that "[h]e got write-ups"), 222 (stating that he was being "writ[ten] . . . up for a million things").  She does not specify what Ryan was accused of having done.  She also alleges that Ryan "called corporate a couple of times" to complain—about what it is not entirely clear—and that as a consequence "I think they moved him from his floor," but he was not fired.  Id. at 195; see also id. at 216 (stating that "[h]e had meetings.  But . . . he's still working.  And he didn't get terminated.  They moved him.  They didn't discipline, didn't fire him or anything because . . . he was a male."), 222 ("When Ryan was, you know, when they were writing Ryan up, White male nurse, they, I'm sure they had meetings and meetings and meetings.  And they had -- I don't know what they had.").

At her deposition, Clarke was asked, "[H]ow do you know what, any details about Ryan's personnel or administrative discipline were?"  Clarke Depo. at 195.  Clarke readily admitted that she obtained any knowledge of the details (if one can fairly call any of the foregoing "details" rather than mere vague descriptions) of Ryan's situation

7

"[t]hrough a conversation with [Ryan]." Id.[2] From reading this statement and the remainder of those portions of Clarke's deposition in which she discusses Ryan, the court can only conclude that Clarke's knowledge of the facts of Ryan's case consists almost entirely of inadmissible hearsay, see Fed. R. Evid. 801(c), and that she lacks personal knowledge of the facts of his situation, see Fed. R. Evid. 602.  The information Clarke presents in her deposition regarding Ryan is thus not competent to establish that Ryan is an appropraite comparator for the purposes of this case.  Even assuming that Ryan is an appropriate comparator, Clarke has not come forward with any admissible evidence of how One Emerson Drive treated Ryan.  What Clarke presents is, instead, simply a secondary, vague, and conclusory accounting of Ryan's background, situation, and treatment by One Emerson Drive.  This is insufficient to sustain Clarke's burden at this stage: Clarke has not provided evidence giving rise to an inference of gender discrimination on the basis of disparate treatment of her and men, and accordingly no reasonable jury on this record could find for her on her claim of gender discrimination.

The court grants the Motion with respect to the gender discrimination counts, i.e., Counts Two (Title VII) and Five (CFEPA).

B.     Retaliation

Clarke claims that One Emerson Drive terminated him with a motive that was retaliatory in a way that violates Title VII and the CFEPA.

> The elements of a claim of retaliation under these laws are: (1) that plaintiff engaged in activity protected by the law, (2) that the employer was aware of the

---

[2] At one point later in her deposition, Clarke states that she "s[aw] the write-ups that Ryan received" because she received them "[w]hen the State responded to [he]r CHRO complaint." Id. at 218. That Clarke says these papers exist does not save her claim here because she has not submitted any such documents among her opposition papers.  Any accounting she gives based on them is just as secondary as her accounting through Ryan.

8

protected activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action.

Malacarne v. City Univ. of N.Y., 289 F. App'x 446, 447 (2d Cir. 2008); see also Kaytor v. Electric Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010) (same standards govern retaliation claims under Title VII and the CFEPA).  The activities protected under these statutes are attempts "to secure . . . rights" guaranteed by the statutes.  CBOCS West, Inc. v. Humphries, 553 U.S. 442, 463 (2008).  As the Second Circuit put it recently:

> An employee's complaint may qualify as protected activity, satisfying the first element of this test, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.  And not just any law—the plaintiff is required to have had a good faith, reasonable belief that [he] was opposing an employment practice made unlawful by Title VII.

Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (citations and quotation marks omitted).

One Emerson Drive argues that Clarke's retaliation claim fails because she has not proffered any evidence that she was engaged in protected activity—i.e., it argues that she has no evidence that creates a material issue of fact on the first prong of her retaliation claims.  Clarke claims that she took protected actions in two ways: first, contacting Dick Blinn, One Emerson Drive's "New England Vice President," twice in early 2012; second, complaining that she was being treated differently because of her race in a meeting with Peggy Yush, Pam Liggins, and Brandy Arrowsmith (management and human resources staff).  See Pltf. Mem. at 20–21.

    1.    Complaint to Dick Blinn

With regard to her contacting Dick Blinn, Clarke points to the following two excerpts of her deposition:

> Q. . . . [W]hy did you contact Dick Blinn?
> A. Because there, you know, it's one thing when you're writing me up every week for nonsense. You know, systematically trying to fire me. Now you're going to assess my character. You're getting patients to write statements, patients that, you know, dementia patients to write lies about me. Now you're taking it to the next level.
> Q. So, why did you contact Dick Blinn, to say what?
> A. Exactly what I just said.
> Q. And did you talk to Dick Blinn?
> A. I spoke to his secretary.

Clarke Depo. at 187–88.

> Q. You did not tell Dick Blinn's secretary that you were being discriminated against on the basis of your race or your gender; did you?
> A. I didn't have a meeting.
> Q. I know. But when you talked to her on the phone?
> A. I'm not sure what I said. I might have said that.
> Q. You might have said that?
> A. Yes.
> Q. Well, what exactly did you say believing you might have said that?
> A. Well, I'm not sure. I don't remember the conversation. But I know I told her I was being treated unfairly.
> Q. You were being treated unfairly?
> A. And being discriminated against, I don't remember.

Id. at 212–213.[3]

These two excerpts from Clarke's deposition do not create a genuine issue of material fact that Clarke took any protected activity in any communications with Blinn or Blinn's assistant. "[T]he mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980); see also Posey v. Skyline Corp., 702 F.2d 102, 105–06 (7th Cir. 1983) (holding that employee's statement that he "never saw and does not recall ever reading a notice to employees of

---

[3] Clarke also cites to page 177 of the transcript of her deposition, see Pltf. Mem. at 20 (citing Clarke Depo. at 177), but the court discerns nothing on page 177 of Clarke's deposition referring in any manner to any attempted communication with Blinn.

their rights under the [ADEA]" was insufficient to establish genuine issue of material fact as to whether the notice had been posted). Clarke's statements here are, at best, equivocal as to whether she took any of these actions in attempts "to secure . . . rights" guaranteed by the applicable statutes. Thus, these statements are insufficient to establish a genuine dispute as to whether Clarke engaged in protected activity through her attempted communications to Blinn.

### 2.     Complaint at meeting with Peggy Yush

As for the complaint at the meeting with Peggy Yush, Clarke points to statements by Yush at her deposition. Pltf. Mem. at 21. There, the following exchange occurred:

> [Clarke's attorney:] Do you recall if Michelle Clark[e] ever made any complaints that she was being treated differently because of her race?
> [Yush:] She made that comment in front of the HR director. When we were having a meeting with her, Pam Liggins was there; I think Brandy was there. We were in a conference room. And Michelle made that statement that she felt that way. And I think Pam Liggins asked her why she felt that way and she became angry. And I don't remember her exact verbiage, but I just remember that meeting.

Transcript of Deposition of Peggy Yush (Doc. No. 49-3 at 58) at 33–34. This meeting, Yush said, took place "within maybe a month or a couple weeks" of Clarke's termination. Id. at 34.

Strangely, at her own deposition, apparently referring to the same meeting, Clarke appears to have denied that she made any such statement. See Clarke Depo. at 194 ("Q. Did you tell people in that room that you were being treated unfairly because you're Black? A. I didn't say that.").

Nonetheless, because first, it is not clear that Clarke was actually referring to the same meeting, and, second, a jury could, even believing both witnesses to be referring to the same meeting, conclude that Clarke did take protected action at the meeting, the

11

court concludes that the proffered evidence creates a genuine issue of material fact on this front and denies summary judgment as to the applicable retaliation claims on this basis.

The court denies the Motion with respect to the retaliation counts, <u>i.e.</u>, Counts Three (Title VII) and Six (CFEPA).

## IV.     CONCLUSION

The Motion (Doc. No. 42) is **GRANTED IN PART AND DENIED IN PART**. Counts One, Three, Four, and Six will proceed.  Judgment will enter for the defendant on Counts Two and Five.

**SO ORDERED**.

Dated at New Haven, Connecticut this 28th day of May 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
